# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| DONALD J. KINSELLA and JULIE A. KINSELLA, | )<br>)<br>) |
| Plaintiffs, | )<br>) |
| v. | ) No. 17 C 05236<br>)<br>) Judge John J. Tharp, Jr. |
| CAPITAL ONE, N.A., | )<br>) |
| Defendant. | )<br>)<br>) |

## MEMORANDUM OPINION AND ORDER

Plaintiffs Donald and Julie Kinsella allege that Capital One misrepresented itself as the proper party to foreclose on the Kinsellas' mortgage in order to fraudulently induce the Kinsellas to negotiate with Capital One to resolve the foreclosure matter. Capital One responds that by acquiring ING Bank—the bank that held the Kinsellas' mortgage—Capital One became ING's successor in interest and was entitled to foreclose on the mortgage; hence, there was no misrepresentation. The Court takes judicial notice of an Office of Comptroller of the Currency certification of merger showing that Capital One acquired ING, which disallows as a matter of law any plausible inference that Capital One lied about being the proper plaintiff in the foreclosure matter. The Kinsellas attempt to change their theory in their briefs, but that effort only highlights the implausibility of a claim predicated on Capital One's actions. The Amended Complaint is therefore dismissed.

# BACKGROUND[1]

ING Bank, FSB ("ING") initiated a foreclosure action against the Kinsellas in 2012. The Circuit Court of Will County ("Circuit Court") entered a default judgment and order of foreclosure later that year. Am. Compl., ECF No. 30, ¶¶ 3–4. Consistent with those orders, ING scheduled a sheriff's sale of the underlying property for March of 2013. *Id.* ¶ 5. The day before the scheduled sale, however, the Circuit Court entered an order vacating the default judgment and withdrawing the sheriff's sale. *Id.* ¶ 8. For reasons unexplained, the sale nevertheless proceeded as scheduled, and ING submitted a successful bid at half the value of the mortgage. *Id.* ¶ 9. Although the sale was recorded with the Will County Recorder of Deeds ("Recorder's Office"), the Kinsellas were not aware of or given notice of the sale at the time. *Id.* ¶¶ 10–11. The certificate of sale that was recorded is a publicly available document that is reviewed by credit reporting agencies, lenders, and appraisers to determine a borrower's creditworthiness and determine appraisal values. *Id.* ¶ 12. In July of 2013, ING, having become aware that the foreclosure sale had proceeded in violation of the Circuit Court's order, moved to void the sale. *Id.* ¶¶ 13–14. The Court entered an order voiding the foreclosure sale, but the order voiding the sale was not recorded with the Recorder's Office. *Id.* ¶¶ 15–16. The Kinsellas allege that ING's failure to record the order voiding the sale harmed the Kinsellas' ability to obtain a loan modification and lowered subsequent appraisal values of the property. *Id.* ¶¶ 17.

ING filed a motion with the Circuit Court in September of 2013 to substitute Capital One, N.A. as the plaintiff based on Capital One's 2012 acquisition of ING. *Id.* ¶¶ 20–21; *see also* Def.'s Mem. of Law in Supp. of its Mot. to Dismiss Pls.' Am. Compl., Ex. A, ECF No. 34-1, Office of

---

[1] As this is a motion to dismiss, the Court accepts all well-pleaded facts as true and construes all inferences in favor of the plaintiff. *Zemeckis v. Global Credit & Collection Corp.*, 679 F.3d 632, 634 (7th Cir. 2012).

the Comptroller of the Currency Certification of National Bank Merger ("Certification of Merger"). So far as the record in this case reveals, the state court never ruled on that motion, but thereafter Capital One filed pleadings in the foreclosure case as "Capital One, N.A., as Successor by Merger to ING, Bank FSB," including a motion for summary judgment that was granted in June of 2015 and resulted in another foreclosure sale order. *Id.* ¶¶ 22–24, 26–28. In or around August of 2015, during negotiations with Capital One for a loan modification, the Kinsellas became aware of the second foreclosure order. *Id.* ¶ 32. The Kinsellas filed an emergency motion to vacate the order, which was granted in November of 2015. *Id.* ¶¶ 33–34.

In a letter dated December 8, 2016, Capital One identified itself as the "Servicer of" and "Investor on" the loan (as opposed to the "Holder of the Note") and notified the Kinsellas that they were approved for a loan reinstatement or modification. *Id.* ¶¶ 36–37, 45; *see also* Am. Compl., Ex. 3, ECF No. 30-3, Letter from Capital One to Donald J. Kinsella, Dec. 8, 2016. The Kinsellas allege that they did not receive the letter until January 12, 2017, by which time the offer contained therein had expired. Am. Compl. ¶ 38. Throughout the pendency of the foreclosure matter, the Kinsellas have been negotiating with Capital One to obtain a loan modification, to discuss refinancing options, and to request the paperwork necessary to conduct a short sale of the property. *Id.* ¶ 29. The Kinsellas say that they were notified on multiple occasions that they had been approved for a loan modification, but Capital One refused to provide the approved loan modification terms, saying that it was merely the servicer of the loan. *Id.* ¶¶ 30–31.

The Kinsellas allege that Capital One falsely represented itself as the proper foreclosure plaintiff both to induce the Kinsellas to continue negotiating with Capital One regarding the foreclosure matter and to obtain judgment against them. *Id.* ¶¶ 43, 46. The Kinsellas allege that they relied on those representations while attempting to obtain a loan modification and resolve the

foreclosure matter, which prevented them from selling the home or refinancing or modifying the loan, damaged their credit rating, and diminished the value of their home. *Id.* ¶¶ 44, 47.

In May 2017, the Kinsellas filed this action in the Circuit Court of Will County, Illinois. Notice of Removal, Ex. A, Compl., ECF No. 1-1. Capital One removed the case to this Court, premised on diversity jurisdiction.[2] Notice of Removal, ECF No. 1. The Kinsellas filed, but subsequently abandoned, a remand motion premised on the relationship between this case and the long-running state foreclosure action, ECF Nos. 20, 32, instead filing the Amended Complaint on which this case now proceeds, ECF No. 30.

## DISCUSSION

### I. Pleading Standard

Prevailing federal pleading standards require complaints to contain allegations that, if taken as true, plausibly suggest that the plaintiff is entitled to relief. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555–56 (2007). And to prevail on a common law fraud claim under Illinois law,[3] a plaintiff must show that 1) the defendant made a false statement of material fact; 2) the defendant knew the statement was false; 3) the defendant intended that the false statement induce the plaintiff to act; 4) the plaintiff relied on the truth of the statement; and 5) the plaintiff suffered damages resulting from reliance on the statement. *Connick v. Suzuki Motor Co.*, 675 N.E.2d 584, 591 (Ill. 1996). To survive a motion to dismiss, however, a plaintiff is not obligated to plead "facts that bear on the

---

[2] Defendant Capital One is a citizen of Delaware and Virginia. Am. Compl. ¶ 2. The Kinsellas' complaints plead only that the plaintiffs are *residents* of Illinois, but the removal notice asserts, without contradiction by the plaintiffs, that they are *citizens* of Illinois. Notice of Removal, ECF No. 1, ¶ 7. Accordingly, and in view of the nature of this case, which involves a long-running foreclosure action involving the residence where the plaintiffs continue to reside, the Court is satisfied that there is diversity of citizenship between the parties. The complaints plead that damages are in excess of $500,000. Notice of Removal, Ex. A, Compl, ECF No. 1-1, ¶ 47; Am. Compl., ECF No. 30, at 5.

[3] The parties do not suggest that the law of any other jurisdiction applies.

4

statutory elements of a claim. Instead, the Federal Rules of Civil Procedure require plaintiffs to plead *claims* rather than facts corresponding to the elements of a legal theory." *Rowlands v. United Parcel Serv. - Fort Wayne*, 901 F.3d 792, 800 (7th Cir. 2018) (emphasis in original) (internal citation and quotations omitted). Ordinarily, a complaint need contain only allegations sufficient to show that there is "more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). When a claim sounds in fraud, however, it is subject to the heightened pleading standard set forth in Federal Rule of Civil Procedure 9(b). *Newman v. Metro. Life Ins. Co.*, 885 F.3d 992, 998 (7th Cir. 2018) ("[C]ommon-law and statutory fraud claims must be pleaded with the detail required under Rule 9(b)'s heightened standard."). Under Rule 9(b), "a party must state with particularity the circumstances constituting fraud." *See also Borsellino v. Goldman Sachs Group, Inc.*, 477 F.3d 502, 507 (7th Cir. 2007) ("This heightened pleading requirement is a response to the great harm to the reputation of a business firm or other enterprise a fraud claim can do.") (internal quotations omitted). A plaintiff must state the "who, what, when, where, and how" of the fraudulent conduct. *Wigod v. Wells Fargo Bank, N.A.*, 673 F.3d 547, 569 (7th Cir. 2012). To satisfy Rule 9(b), the factual allegations must present "a sufficiently detailed and cohesive theory of the fraud." *Webb v. Frawley*, No. 18-1607, 2018 WL 4924354, at *8 (7th Cir. Oct. 11, 2018) (affirming dismissal of complaint that failed to allege specifics of the allegedly fraudulent misrepresentations or provide an explanation for how they furthered the objectives of the alleged scheme).

## II. The Alleged Fraud

As the Court understands the Amended Complaint, the Kinsellas claim that they were defrauded because Capital One falsely represented itself as "the proper party plaintiff in the foreclosure matter." Am. Compl. ¶ 44. The purpose of this ruse, they allege, was to obtain a default

judgment against the Kinsellas by inducing them to negotiate with Capital One concerning modification of the loan or a short sale of the property—efforts that were doomed to fail, they contend, because as Capital One then explained, it could not renegotiate the loan terms because it was only the servicer of the loan rather than the note holder. As a result, the Kinsellas allege that they were prevented from selling or refinancing the home, the appraised value of the home declined, and their credit rating suffered. These allegations founder, however, because it is clear that Capital One is "the proper party" in the foreclosure matter.

Recognizing as much, the Kinsellas have in their briefs essentially flipped their theory on its head. In defending the Amended Complaint, the Kinsellas now concede that Capital One "had the sole authority to negotiate and resolve the foreclosure action [and that] any statements to the contrary made by the Defendant to the Plaintiff [sic] were simply not true." Pls.' Resp. to Def.'s Mot. to Dismiss Am. Compl. ("Resp."), ECF No. 41, at 5. In other words, the alleged misrepresentation that the Kinsellas now assert is Capital One's alleged statement that it was only the loan servicer and had no authority to grant a loan modification. That about-face comes too late, but even were it permissible, the Kinsellas' revised theory would still fall well short of stating "a sufficiently detailed and cohesive theory of the fraud," *Webb*, *supra*, to satisfy the requirements of Rule 9(b).

### A.  Appropriate Foreclosure Plaintiff

To begin, to the extent that the Amended Complaint rests on the premise that Capital One misrepresented itself as "the proper party" to enforce the terms of the Kinsellas' mortgage loan, it fails as a matter of law. The Kinsellas concede that ING, the original noteholder, merged into Capital One in 2012, Resp., ECF No. 41, at 2, and this Court takes judicial notice of the U.S. Treasury Department's Office of the Comptroller of the Currency Certification of National Bank

6

Merger ("Certification of Merger") showing that Capital One acquired ING in 2012, Def.'s Mem. of Law in Supp. of its Mot. to Dismiss Pls.' Am. Compl., Attach. A, ECF No. 34-1, Office of the Comptroller of the Currency Certification of National Bank Merger. Federal Rule of Evidence 201(b) allows a court to "judicially notice a fact that is not subject to reasonable dispute because it can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Judicial notice may be taken of facts contained in reports of administrative bodies, such as the Treasury Department's Office of Comptroller of the Currency. *See Menominee Indian Tribe of Wisconsin v. Thompson*, 161 F.3d 449, 456 (7th Cir. 1998) ("Judicial notice of historical documents, documents contained in the public record, and reports of administrative bodies is proper."). Taking judicial notice of the Certification of Merger is particularly appropriate here given that Capital One's status vis-à-vis ING is central to the Kinsellas' fraud claim, with the merger specifically referred to in paragraphs 21 through 27 of the Amended Complaint. *See Brownmark Films, LLC v. Comedy Partners*, 682 F.3d 687, 690 (7th Cir. 2012) ("It is well settled that in deciding a Rule 12(b)(6) motion, a court may consider documents attached to a motion to dismiss . . . if they are referred to in the plaintiff's complaint and are central to his claim.") (citing *Wright v. Assoc. Ins. Cos. Inc.*, 29 F.3d 1244, 1248 (7th Cir. 1994)) (internal quotations omitted).

Capital One became ING's successor in interest with respect to the mortgage when the merger was consummated. *See* 735 ILCS 5/15-1208 ("'Mortgagee' means . . . any person claiming through a mortgagee as successor."); *see also Olympic Fed. v. Whitney Dev. Co.*, 447 N.E.2d 1371, 1378 (Ill. App. Ct. 1983) (holding that successor by merger to mortgage "properly established itself as the current owner of the note and mortgage"). As ING's successor in interest, Capital One had no duty of which the Court is aware—or to which the Kinsellas have pointed—to assign the mortgage from ING to Capital One. Instead, the transfer of the mortgage occurred by operation of

law when the merger was consummated. *See Standard Bank & Tr. Co. v. Madonia*, 964 N.E.2d 118, 123 (Ill. App. Ct. 2011) ("Because the original mortgagee merged with a bank that ultimately merged with Standard Bank, Standard Bank succeeded to the mortgage rights possessed by the original mortgagee . . . as a matter of law.").

A successor in interest to a mortgage has the right to exercise its rights and privileges with respect to that mortgage, including foreclosing on a homeowner in default. *See Olympic Fed.*, 447 N.E.2d at 1378 (holding that a "merged savings and loan association . . . is an ongoing entity that retains all of its liabilities, rights, and interests in property without the need for a transfer"). Another court has found specifically with respect to the ING-Capital One merger that evidence of the Capital One-ING merger properly established a chain of ownership of a mortgage. *See In re Jackson*, No. 10-11716-MSH, 2013 WL 6903752, at *5–7 (Bankr. D. Mass. Dec. 31, 2013). No assignment of mortgage needed to take place because Capital One became ING's successor in interest as a matter of law as of the merger. Considering the Amended Complaint in light of the Certification of Merger, there is no plausible basis upon which to conclude that Capital One misrepresented that it was the proper plaintiff to prosecute the foreclosure action. The Kinsellas certainly offer none; indeed, they concede in their Response that "as early as November 1, 2012, the defendant had sole authority to negotiate and resolve the foreclosure action." ECF No. 41, at 5; *see also id.* at 4 (acknowledging that Capital One "may be able to show that, subsequent to its acquisition of ING, [it] was the appropriate party to pursue the foreclosure action against the Plaintiffs and therefore did not lie in open court about its status").[4] The Court concurs that it is

---

[4] In their Surreply, the Kinsellas take issue with Capital One's characterization of this statement as a concession. They ignore, however, their unequivocal statement that "as early as November 1, 2012, the defendant had sole authority to negotiate and resolve the foreclosure action." ECF No. 41, at 5.

implausible to infer that Capital One misrepresented its right to enforce the mortgage against the Kinsellas.[5]

B. **Approval for Loan Modification**

The Kinsellas also allege that Capital One identified itself as the servicer of and investor in the loan rather than the holder of the note. Am. Compl. ¶¶ 31, 37, 45. As presented in the Amended Complaint, the Kinsellas seem to allege that these statements about the bank's lack of authority were true and that the fraud lay with the bank's claim that it was the legal successor to the rights of ING as the original mortgagee. Persisting in the position that Capital One's representations regarding its lack of authority with respect to the mortgage were true, however, would preclude the Kinsellas from asserting fraud based on Capital One's failure to grant them loan modifications: If Capital One were telling the truth when it said it could not grant a modification, there could be no fraud claim arising from its failure to grant such a modification. Accordingly, the Kinsellas have done an about-face with respect to their fraud allegations; now they argue that any statements by the bank that it did *not* have authority to modify the terms of the loan were fraudulent.

As an initial matter, there are no such fraudulent misstatements adequately alleged in the Amended Complaint. There are only three paragraphs in which there are any references to Capital

---

[5] Having found that Capital One's statements about its right to enforce the mortgage were not misstatements, the Court need not address the applicability of Illinois's absolute litigation privilege, which affords immunity to litigants for statements made in connection with litigation. *Steffes v. Stepan Co.*, 144 F.3d 1070, 1074 (7th Cir. 1998). But the Court notes that the litigation privilege would likely shield some or all of Capital One's statements—depending on the nexus between those statements and the underlying foreclosure litigation—from giving rise to a fraud claim. *Cf. Kurczaba v. Pollock*, 742 N.E.2d 425, 438 (Ill. App. Ct. 2000) (stating that litigation privilege was available in libel context if statement "was made in a judicial proceeding; had some connection or logical relation to the action; was made to achieve the objects of the litigation; and involved litigants or other participants authorized by law") (internal citation and quotations omitted).

One's role as servicer of the loan. The first appears in paragraph 31, where the Kinsellas allege only that Capital One "refused and failed to provide" terms of the approved loan modifications, "stating that they were servicers of the loan." Rule 9(b) requires plaintiffs to provide the "who, what, when, where, and how" as to allegedly fraudulent misstatements, *Wigod*, 673 F.3d at 569, but these allegations fail to provide anything more than a bare summary of what was said and no information about when the conversation occurred, who was involved, or when it took place. This communication has not been pleaded with particularity and cannot serve as the basis of a fraud claim.

The other two references, in paragraphs 37 and 45, relate to a letter dated December 8, 2015, from Capital One to the Kinsellas and do not suffer from the same particularity problem. Nevertheless, those references cannot support a fraud claim because there is no inconsistency between Capital One's status as note holder, investor, and loan servicer; one relationship does not preclude the others. Indeed, the letter in which Capital One identified itself as the investor in and servicer of the loan is same the letter in which Capital One approved the Kinsellas for a reinstatement or modification of the loan. Am. Compl. ¶¶ 36–37. Moreover, it is evident on the face of the December 8 letter that Capital One is the entity that approved the loan modification options offered to the Kinsellas; Capital One clearly was in a position to grant loan modifications regardless of the label used to describe its relationship to the mortgage. *See* Am. Compl., Ex. 3, ECF No. 30-3, at 1 ("We reviewed the information you provided . . . You're approved . . . .").

Beyond these threshold deficiencies, the Kinsellas' contention that Capital One was engaging in sham negotiations with the Kinsellas goes nowhere. The sham negotiation hypothesis

makes no sense when it is acknowledged that Capital One had authority to modify the loan.[6] In that case, it had no need to engage in sham negotiations; if it wanted to preclude a loan modification for the Kinsellas, it could simply decline to enter into one. How then, one is compelled to ask, would it have served Capital One's interests to mislead the Kinsellas about the availability of a potential loan modification? The Amended Complaint is no help in answering that question (again, its premise is that statements to the effect that it did not have authority to modify the loan were *true*, not false). As noted, the theory that statements about Capital One's inability to grant loan modifications appears not in the Amended Complaint but in the Kinsellas' briefs. *See* Resp., ECF No. 41, at 4–5; Surreply, ECF No. 46. But those briefs also fail to offer any basis at all to infer that misleading the Kinsellas about Capital One's authority to approve loan modifications furthered some interest of the bank's. The Kinsellas' briefs simply ignore this obvious hole in their new theory. And while Rule 9(b) does not require pleading state of mind, a "complaint must afford some basis for believing that plaintiffs can prove scienter." *Borsellino v. Goldman Sachs Grp., Inc.*, 477 F.3d 502, 508 (7th Cir. 2007) (affirming dismissal of complaint that did not "shed any light on the fundamental implausibility of the fraud").

Finally, the Court discerns no basis to rescue the Kinsellas' claim by looking beyond its fraud theory. Though a plaintiff need not identify a legal theory in pleading his claim, he must be able to point to a plausible theory in response to a motion to dismiss. Here, the Kinsellas have defended the viability of their Amended Complaint solely on the basis of a common law fraud

---

[6] This is not to suggest that the sham negotiation hypothesis makes any sense in the context of the complaint's allegations either. The premise of the complaint, again, is that Capital One lacked authority to approve loan modifications because the loan had not been assigned to it. The theory discernible in the Amended Complaint, if barely, is that having no authority to approve or deny loan modifications, Capital One was stringing the Kinsellas along in hopes of obtaining a judgment against them. How pretending to negotiate a loan modification would help a bank obtain a judgment against a borrower in default, however, is an unexplained mystery.

theory, which fails for the reasons discussed above, and the Court sees no basis to believe that there is any other legal theory that would plausibly support their claim. To the extent that the Kinsellas' claim can be construed as simply asserting that Capital One failed to provide them with the terms for a loan modification during the course of negotiations, it fails as well. The Court is aware of no duty—and certainly the Kinsellas have not pointed to one—that would require Capital One to provide the Kinsellas with a loan modification or to permit a short sale.

## II.  Causation and Damages

Even if the Amended Complaint adequately alleged a plausible misrepresentation by Capital One, it would still fail because the Kinsellas have not alleged, nor does the Court have a sufficient basis upon which to infer, a plausible link between any fraudulent misrepresentation by Capital One and harm to the Kinsellas. The Kinsellas do not allege that Capital One fraudulently induced the Kinsellas to default on their mortgage; their original default predates Capital One's merger with ING, and ING filed the foreclosure action in April 2012. The Amended Complaint alleges damages arising from the foreclosure action, but it does not allege that either of the foreclosure orders were entered as the result of unlawful conduct by Capital One. Although the March 2013 sheriff's sale was conducted in violation of the Circuit Court's order, the Kinsellas have not alleged that Capital One fraudulently procured such a result, and ING successfully moved to void the sale. Am. Compl. ¶¶ 13–15. Further, although the Kinsellas allege they suffered damages as a result of ING's failure to file the Circuit Court's order voiding the sheriff's sale with the Recorder's Office, *id.* ¶¶ 16–19, the Kinsellas have not alleged any affirmative duty requiring ING or Capital One to do so. All of these events occurred before Capital One filed its motion to substitute for ING in September 2013 and Capital One had nothing to do with them so far as the Amended Complaint alleges.

The question as it relates to damages is therefore whether Capital One's alleged misrepresentation about its authority to enforce the mortgage exacerbated the harm that had occurred or would naturally have occurred as a consequence of the underlying default. In that regard, too, the Amended Complaint is entirely inadequate. The Amended Complaint alleges that "as a result of the actions of Capital One"—that is, as a result of Capital One's assertion that it is now the note holder on the Kinsellas' loan—that the Kinsellas have been prevented from selling or refinancing the home, that their credit rating was damaged, and that the appraised value of the home diminished. Am. Compl. ¶ 47. These conclusory allegations, unsupported by any factual detail or explanation, are simply implausible. As Capital One argues, even accepting arguendo the premise that Capital One lied about being the proper party plaintiff in the foreclosure matter, the Amended Complaint provides no basis to infer that the lie prevented the Kinsellas from selling their home or refinancing their loan. Buyers would not know who the Seller's lender was and the evaluation by other banks of the Kinsellas' credit-worthiness would have nothing to do with the identity of their lender. Nor would the identity of one's mortgage lender affect one's credit rating or the appraisal of one's home. The damages to which the Kinsellas' point have nothing to do with the identify of their lender and everything to do with the erroneous entries of default judgments against them. But those events, while unfortunate, were not caused by Capital One.

\* \* \*

For the reasons stated above, Capital One's Motion to Dismiss Plaintiffs' Amended Complaint [33] is granted. The Kinsellas have requested leave to file a second amended complaint in the event Capital One's motion were granted. Although a claim based on a theory that Capital One lacked authority to enforce the mortgage against the Kinsellas would be futile, the Court cannot, on the basis of this ruling, exclude entirely the possibility that the Kinsellas may be able

13

to allege other facts that give rise to a claim against Capital One. As yet, the Kinsellas have not had the opportunity to consider the Court's view of the deficiencies in their claim and, as a general matter, they should be given at least one opportunity to replead after the grant of a motion to dismiss. *See generally Runnion ex rel. Runnion v. Girl Scouts of Greater Chicago and Nw. Indiana*, 786 F.3d 510, 519–20 (7th Cir. 2015) ("Unless it is *certain* from the face of the complaint that any amendment would be futile or otherwise unwarranted, the district court should grant leave to amend after granting a motion to dismiss.") (emphasis in original). Accordingly, the dismissal is without prejudice and the Kinsellas are given leave, consistent with the requirements of Federal Rule of Civil Procedure 11, to file a second amended complaint on or before December 7, 2018. Absent timely amendment, the Court will enter judgment on behalf of Capital One.

Date: November 9, 2018

John J. Tharp, Jr.
United States District Judge